IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MOHSIN KHAWAJA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BAY MANAGEMENT GROUP, LLC, | : | |
| et al. | : | NO. 22-182 |

MEMORANDUM

Bartle, J.                                        January 9, 2023

　　　　Plaintiff Mohsin Khawaja has sued defendants Bay
Management Group, LLC; Bay Management Group Philadelphia, LLC;
and Dana Anderson for defamation in this diversity action.[1]  The
action was originally filed in the Court of Common Pleas of
Philadelphia County on December 16, 2021, and timely removed to
this court.  Before the court is the motion of defendants for
summary judgment.

I

　　　　Under Rule 56 of the Federal Rules of Civil Procedure,
summary judgment is appropriate "if the movant shows that there
is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323

---

1.  The court previously dismissed Khawaja's complaint to the
extent he asserted claims for tortious interference with
prospective contracts and "Vicarious Liability/Respondeat
Superior." Khawaja v. Bay Mgmt. Grp., LLC, Civ. A. No. 22-182,
2022 WL 1308508, at *3 (E.D. Pa. May 2, 2022).

(1986).  A factual dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A factual dispute is material if it might affect the outcome of the suit under governing law.  Id. at 248.

The court views the facts and draws all inferences in favor of Khawaja, the nonmoving party.  See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).  "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]."  See Anderson, 477 U.S. at 252. "The plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Id. at 257.  Such evidence must be admissible.  Fed R. Civ. P. 56(c)(2).  If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of summary judgment.  Fed. R. Civ. P. 56(e).

II

The following facts are undisputed unless where otherwise noted.  In 2018, Khawaja co-founded MBMK Property Holdings, LLC, through which he purchased and leased residential properties in Philadelphia and Delaware County, Pennsylvania.

-2-

On September 3, 2019, MBMK contracted with defendant Bay
Management Group Philadelphia LLC to manage its properties.
Defendant Dana Anderson is the president of Bay Management Group
Philadelphia, LLC.  Bay Management Group Philadelphia, LLC and
co-defendant Bay Management Group, LLC both use logos that
appear in the same font and style.  Anderson is also listed on
the website of Bay Management Group, LLC as the "President of
[Its] Pennsylvania Territory."  However, Anderson has no
ownership interest in Bay Management Group, LLC and testifies
that he has not been employed with the entity since 2018.

On August 30, 2019, Khawaja filed a voluntary petition
for Chapter 7 bankruptcy in the Eastern District of Pennsylvania
in connection with personal gambling debts.  On a financial
statement, he disclosed that he owed $3,590,000 in debt to more
than a dozen casinos around the country.  Several casinos filed
adversary complaints in Khawaja's bankruptcy proceeding seeking
to prevent discharge of the debts he owed to them.  The casinos
asserted that Khawaja incurred the debt in connection with his
gambling activities.  Specifically, they alleged Khawaja made
false representations, willing omissions, and implied
misrepresentations to them for the purpose of obtaining lines of
credit.  As of the filing of the bankruptcy petition, Khawaja's
interest in MBMK was held by a bankruptcy trustee.  Khawaja at
that point lacked any position of authority with MBMK.

-3-

Sometime in 2020, MBMK co-founder and Khawaja's business partner, Matthew Breen, spoke with Anderson.  Breen informed Anderson of Khawaja's bankruptcy filing and the casinos' subsequent petitions to recover debt that he allegedly owed to them.  Breen also relayed reports to Anderson that MBMK tenants had been told to pay rent to an individual instead of to Bay Management Group Philadelphia as required under its agreement with MBMK.

On December 3, 2020, Wilmington Trust, MBMK's lender, through counsel issued a notice to all tenants of MBMK properties instructing them to remit rent payments only to Bay Management Group Philadelphia:  "We have been advised that one of the owners of your property may be contacting you directly to collect the rent. YOU MAY NOT PAY YOUR RENT TO ANYONE OTHER THAN Bay Management Group Philadelphia, LLC."

Anderson concedes he spoke with a representative of Wilmington Trust and relayed reports that Khawaja had told tenants to pay rent to an intermediary individual rather than to Bay Management Group Philadelphia.  Anderson testifies at his deposition:

> Q. Did you ever tell the lender that Mr. Khawaja was stealing rental income?
>
> A. I cannot say for certain. I may have said there were – there was money that had gone to someone, like, intermediary from some of the tenants to this intermediary that we

assume was being, I would say, hired or told
to do this via the plaintiff. So we do have
checks made out to a Hector, can't recall
his last name, from some of our tenants, in
the memo line it says rent, so I did tell
the lender that.

. . .

Q. Okay. Did you identify Mr. Khawaja when
you told the lender that?

A. Yes, I would – I didn't say it was for
certain, but put two and two together you
have someone paying this guy Hector that
knows Mo, the plaintiff has worked for Mo,
the plaintiff, and it says rent in the memo
line and the tenants say I paid my rent. So
I had to assume that that money likely made
it back to the plaintiff.

The parties dispute when that conversation took place.
Defendants assert that Anderson spoke with a Wilmington Trust
representative before Wilmington Trust sent the December 3, 2020
letter to MBMK's tenants.  Anderson states that this
conversation occurred "just before the lender letters that were
served to each property," in 2020 in the "wintertime."  Khawaja,
on the other hand, claims that this conversation took place
"around July of 2021" after Khawaja sent an email to Bay
Management Group, LLC about MBMK's financial situation.

On December 14, 2020, Anderson sent a text to a tenant
of one of MBMK's properties, which stated in relevant part:
"[Khawaja] is going to jail for a very long time for stealing
money and owing casinos hundreds of thousands of dollars.  We

-5-

will be filing for eviction this week if you do not pay/show proof of payment."

Sometime that year, Breen informed Anderson that an individual was living at an MBMK property without MBMK's or Bay Management Group Philadelphia's permission.  The property was vacant prior to the individual moving in.  Khawaja, however, was aware that the individual was living there at the time.  On December 17, 2020, Anderson sent a letter to that individual, which stated in relevant part:

> Please take this as your 10 day notice to
> quit the premises.  It was brought to our
> attention this week that you are residing at
> [your rental property] illegally as a
> defected member of the ownership broke into
> the premises and gave you the keys.  This
> person, who likely identified himself as Mo,
> has filed for bankruptcy and is being sued
> for millions of dollars for stealing and
> non-payment of debt.

The letter was printed on letterhead that included the logo of Bay Management Group, LLC as well as the text "Bay Property Management Group."

Khawaja commenced this action on December 16, 2021. He alleges that defendants defamed him via three of Anderson's statements: (1) his oral conversation with Wilmington Trust; (2) his December 14, 2020 text message to one of MBMK's tenants;

and (3) his December 17, 2020 letter to a different tenant of
MBMK.[2]

### III

Defendants move for summary judgment on Khawaja's
defamation claim to the extent it is based on Anderson's oral
statements to a representative of Wilmington Trust in which
Anderson stated that Khawaja had told tenants to pay rent to an
intermediary instead of to Bay Management Group Philadelphia--in
essence accusing Khawaja of stealing this rental income.
Defendants argue that Khawaja's claim as it relates to
Anderson's statements to Wilmington Trust is time-barred.

Pennsylvania has a one-year statute of limitations for
defamation.  55 Pa. Cons. Stat. § 5523.  The statute begins to
run when the defamatory statement is published.  Wolk v. Olson,
730 F. Supp. 2d 376, 377 (E.D. Pa. 2010) (citing Dominiak v.
Nat'l Enquirer, 266 A.2d 626, 629–30 (Pa. 1970)).

The parties dispute when the conversation between
Anderson and the Wilmington Trust representative took place.
Anderson testifies that this conversation occurred "just before

---

2.   The court initially dismissed Khawaja's defamation claim to
the extent it was based on Anderson's statements to the
Wilmington Trust representative because Khawaja failed to allege
the content of the statement in his complaint.  See Khawaja,
2022 WL 1308508, at *3.  Later, when deposing Anderson, counsel
for Khawaja elicited testimony from Anderson on the content of
his statement.  Accordingly, the court granted Khawaja leave to
file an amended complaint in which he reinstated his defamation
claim based on this conversation.  See Doc. # 32.

the lender letters that were served to each property," sometime
"around wintertime" in 2020.  Furthermore, defendants have
produced a copy of the letters that Wilmington Trust wrote to
MBMK's tenants, which were dated December 3, 2020.  As mentioned
above, the letter notes that Wilmington Trust "ha[d] been
advised that one of the owners" of MBMK's properties "may be
contacting [tenants] directly to collect rent" rather than
advising them to remit payments to Bay Management Group
Philadelphia.  Because Wilmington Trust's letters referenced the
substance of Anderson's alleged defamatory statement, defendants
argue that the only reasonable inference is that Anderson's
conversation with the Wilmington Trust representative occurred
before Wilmington Trust sent the letters to MBMK's tenants on
December 3, 2020.

        In response, Khawaja testifies that he believes
Anderson had the conversation with a Wilmington Trust
representative in July 2021 shortly after Khawaja sent an email
to the management company about MBMK's financial situation.
This is pure conjecture.  Khawaja was not privy to Anderson's
conversation with the Wilmington Trust representative and thus
lacks personal knowledge of when it took place.  In fact,
Khawaja admits in his deposition that his knowledge about that
conversation came exclusively from reviewing Anderson's
deposition testimony.

Khawaja cannot rely on his speculation to meet his burden of producing competent evidence to dispute the reasonable inference that Anderson had this conversation with Wilmington Trust sometime before Wilmington Trust sent the December 3, 2020 letters.  This lawsuit was not filed until December 16, 2021.  Accordingly, the motion of defendants for summary judgment as to Khawaja's defamation claim over Anderson's oral statements to Wilmington Trust will be granted on the ground that the claim is barred by the one-year statute of limitations.[3]

IV

Defendants next move for summary judgment on Khawaja's defamation claim over Anderson's December 14, 2020 text message in which Anderson claimed that Khawaja was "going to jail for a very long time for stealing money."  Defendants argue that Khawaja's claim based on this text message is also barred by Pennsylvania's one-year limitations period.

Khawaja does not dispute that Anderson sent this text message on December 14, 2020, which is one year and two days before he initiated this action.  Khawaja instead argues that under Pennsylvania law, the discovery rule tolled the limitations period until December 24, 2020.  He claims he first

---

3.   Defendants further contend that Anderson's statement to the representative of Wilmington Trust is substantially true and thus not defamatory.  See, e.g., Rubin v. CBS Broad. Inc., 170 A.3d 560, 565 (Pa. Super. Ct. 2017).  The court need not reach that issue because the claim is time-barred.

learned of the text message on that date when the recipient forwarded it to him.

Under the Pennsylvania discovery rule, "[t]he statute of limitations . . . begins to run when the plaintiff knew or, exercising reasonable diligence, should have known (1) he or she was injured and (2) that the injury was caused by another." Adams v. Zimmer US, Inc., 943 F.3d 159, 163 (3d Cir. 2019).  The party "seeking the benefit of the discovery rule bear[s] the burden of establishing its applicability."  Vitalo v. Cabot Corp., 399 F.3d 536, 543 (3d Cir. 2005).  Whether a plaintiff has exercised reasonable diligence is "usually a jury question," but "the commencement period may be determined as a matter of law" when the "facts are so clear that reasonable minds cannot differ."  Debiec v. Cabot Corp., 352 F.3d 117, 129 (3d Cir. 2003) (quoting Cochran v. GAF Corp., 666 A.2d 245, 248 (Pa. 1995)).

Khawaja has not cited any Pennsylvania appellate case in which the discovery rule tolled a limitations period for a defamation claim.  Several courts have held that the discovery rule does not toll the statute of limitations as to defamatory statements published in mass media.  E.g., Wolk, 730 F. Supp. 2d at 378-79.  Even assuming without deciding that the discovery rule would apply here, Khawaja has not produced admissible evidence to support its application to his claim.

-10-

Khawaja's contention that he learned of Anderson's
December 14 text on December 24 first appears as a statement in
his brief in opposition to the instant motion.  He does not
support this assertion with any affidavit or deposition
testimony.  Rather, he relies solely on a single exhibit that
appears to be a screenshot of a text exchange from an iPhone.
The text exchange includes Anderson's alleged defamatory text.
The name of the tenant who received Anderson's text appears at
the top of the screenshot as well as the date, December 24,
2020.  However, Khawaja does not offer a declaration or any
other extrinsic evidence that would allow this court to find
that the screenshot is what Khawaja purports it to be.  See Fed.
R. Evid. 901(a).

Even if the screenshot were authentic and admissible,
Khawaja cannot rely on it because it was not produced to
defendants in response to a pertinent document request.  In
discovery, defendants requested "any and all . . . text messages
. . . between or among Plaintiff and [the tenant] from October
2020 and the present."  Khawaja's counsel responded, "Plaintiff
has already produced documentation responsive to this request."
Khawaja had only timely produced a copy of the December 14 text
message that Anderson sent to the tenant.  In addition, Khawaja
offers no explanation for why he did not produce the December 24
screenshot earlier.  Because Khawaja failed to produce the

-11-

screenshot of the purported December 24 text message in response
to defendants' request, he cannot now rely on it.  See Fed R.
Civ. P. 26(e); Fed. R Civ. P. 37(c)(1).

        The December 14, 2020 text message was published more
than a year before this action was filed.  Accordingly, the
motion of defendants for summary judgment will be granted on
Khawaja's claim related to this text message on the ground that
the claim is barred by the one-year statute of limitations.[4]

                                V

        Finally, defendants move for summary judgment on
Khawaja's claim stemming from Anderson's December 17, 2020
letter to another one of MBMK's tenants.  The alleged defamatory
statements in this letter are that Khawaja was being sued for
"stealing" and nonpayment of debt and that Khawaja "broke into
the premises" of a rental property to give access to an
unauthorized tenant.  This claim is timely.

        Defendants first contend that the statements in the
letter are substantially true and thus not defamatory.  Truth is
an absolute defense to a defamation claim.  Moreover, a
statement is only defamatory if it is substantially false.  A
"slight inaccuracy" in a statement will not render it defamatory

---

4.   As with Anderson's statement to the Wilmington Trust
representative, the court need not address defendants'
contention that the contents of Anderson's December 14, 2020
text message are substantially true.

"so long as any inaccuracies do not render the substance and
'gist' of the statements untrue."  Rubin v. CBS Broad. Inc., 170
A.3d 560, 565 (Pa. Super. Ct. 2017) (quoting ToDay's Housing v.
Times Shamrock Commc'ns, Inc., 21 A.3d 1209, 1215 (Pa. Super.
Ct. 2011)); see also Masson v. New Yorker Mag., Inc., 501 U.S.
496, 516-17 (1991).  By contrast, the statement is defamatory if
it is materially inaccurate, that is, if the discrepancy from
the truth would alter the statement's "effect upon a reader."
Rubin, 170 A.3d at 565 (quoting ToDay's Housing, 21 A.3d at
1215).  Under Pennsylvania law, the defendant has the burden of
proving the truth of the defamatory statement.  42 Pa. Cons.
Stat. § 8343(b)(1).

        The uncontradicted evidence in the record demonstrates
that the statement that casinos were suing Khawaja for
"stealing" is substantially true.  There is no dispute that
Khawaja owed over $3.5 million in debt to casinos or that he
filed for personal bankruptcy in connection with these debts.
Several casinos filed adversary complaints in Khawaja's
bankruptcy proceeding to prevent discharge of his debts.  In
these complaints, the casinos alleged that Khawaja defrauded
them by making false representations, willing omissions, and

-13-

implied misrepresentations for the purpose of obtaining lines of credit.[5]

There is no real discrepancy between the truth that casinos alleged in adversarial court proceedings that Khawaja had committed fraud and the statement that the casinos sued Khawaja for "stealing."  The difference is negligible.  It amounts to a "mere mistake[] in legal terminology."  Rodney A. Smolla, Law of Defamation, Vol. 1, § 5:24 (2d ed. 2008).  No matter whether Khawaja has been accused of committing "fraud" or accused of "stealing," the effect in the mind of the reader is the same.  See, e.g., Keeshan v. Home Depot, U.S.A., Inc., Civ. A. No. 00-529, 2001 WL 310601, at *15-16 (E.D. Pa. Mar. 27, 2001) (applying Pennsylvania law).

Defendants also contend that the statement that Khawaja "broke into the premises" of an MBMK rental property is substantially true.  The gist of the allegation that an individual "broke in" to a property means that he or she "enter[ed] something (such as a building or computer system) without consent or by force."  Break In, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/break-in.

_____

5.  Khawaja contends the casinos' adversary complaints are inadmissible hearsay.  However, defendants do not offer the complaints to prove the truth of matter asserted therein. Rather, they cite the complaints simply to prove that the complaints were made.

-14-

The property in question was vacant until the tenant who received the letter moved in.  Khawaja, but not Anderson or Breen, was aware that the tenant was living at this property at this time.  There is no dispute that Khawaja did not have any position of authority in MBMK at the time the tenant moved in because the bankruptcy trustee held his interest in MBMK.  These facts, defendants argue, create a reasonable inference that Khawaja entered the property without legal authority in order to offer the tenant unauthorized access to the property.  Khawaja, on the other hand, disputes that he entered the property or granted access to the tenant and testifies that at the time he did not have a key to the property.  Although defendants present a compelling chain of inferences, there is still a genuine dispute of material fact as to whether Khawaja did in fact enter the property in question to provide access to the tenant.[6]

Defendants next argue that Anderson's statement that Khawaja "broke into the premises" is not defamatory because it is subject to common interest privilege.  Pennsylvania has

---

6.  Defendants also contend that the statement that Khawaja "broke into the premises" is nonactionable opinion.  This argument is without merit, however, because the statement is readily falsifiable and otherwise clearly implies the existence of undisclosed facts.  See, e.g., Green v. Mizner, 692 A.2d 169, 175 (Pa. Super. Ct. 1997) (citing Restatement (Second) of Torts § 566)).

adopted the common interest privilege as set out in Section 596

of the <u>Restatement (Second) of Torts</u>:

> An occasion makes a publication
> conditionally privileged if the
> circumstances lead any one of several
> persons having a common interest in a
> particular subject matter correctly or
> reasonably to believe that there is
> information that another sharing the common
> interest is entitled to know.

<u>See also</u> <u>Beckman v. Dunn</u>, 419 A.2d 583, 587 (Pa. 1980).  To

establish this conditional privilege, there must be a "close

relationship" between the speaker and the recipient of the

communication, "such as between members of a family, a work or

business relationship, owners of common property, or common

members of an organization."  <u>Crowe v. Sobieski Servs., Inc.</u>,

Civ. A. No. 17-1310, 2018 WL 3727639, at *4 (E.D. Pa. Aug. 3,

2018) (quoting <u>Wilson v. Am. Gen. Fin. Inc.</u>, 807 F. Supp. 2d

291, 299 (W.D. Pa. 2011)).  In addition, the precise statement

must further the purported common interest.  <u>See</u> <u>id.</u>

        Defendants have not established that Anderson had a

common interest with the tenant who received the letter.

Defendants assert that Anderson and the tenant shared a common

interest in ensuring that the tenant "[was] lawfully residing on

the premises."  However, their relationship as that of a

landowner and a squatter, which is readily distinguishable from

the above-described relationships which courts have found to be

sufficiently close.  Rather, Anderson's threat in the letter to initiate eviction proceedings against the tenant reflects that their relationship was "more adversarial than 'close.'"  Id. Moreover, even if there were a close relationship between Anderson and the tenant, defendants have failed to demonstrate how their common interests were furthered by relaying the circumstances under which Khawaja purportedly gained entry to the property.  See id.

VI

Defendant Bay Management Group, LLC argues that it cannot be held liable for any of Anderson's statements because Khawaja has not demonstrated that Anderson acted as its agent. Because the court will grant summary judgment as to Anderson's oral statement to the representative of Wilmington Trust and his December 14, 2020 text message, the court will consider only whether Anderson was acting as an agent of Bay Management Group, LLC when he sent the December 17, 2020 letter.

Whether an individual is an agent of a principal is a question of fact.  Walton v. Johnson, 66 A.3d 782, 787 (Pa. Super. Ct. 2013).  Khawaja, as the proponent of the agency relationship, bears the burden of proving that such a relationship exists.  Id.

Khawaja relies on a theory of apparent agency.  Under Pennsylvania law, "[a]pparent agency exists where the principal,

by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act." Id. at 786.  Bay Management Group, LLC insists that Khawaja cannot prove that Anderson had apparent authority to send the letter on its behalf without evidence that the tenant who received the letter believed that Anderson had such authority, which is absent from the record here.  However, the test for finding an apparent agency relationship is "whether a man of ordinary prudence, diligence and discretion would have a right to believe and would actually believe that the agent possessed the authority he purported to exercise." Azur v. Chase Bank, USA, Nat. Ass'n, 601 F.3d 212, 219 (3d Cir. 2010) (applying Pennsylvania law).

Anderson's December 17, 2020 letter appears on Bay Management Group, LLC's letterhead.  There has been no suggestion that this letterhead was used fraudulently or in error.  Furthermore, Bay Management Group, LLC holds Anderson out as an executive officer on its website.  There is no dispute that Anderson has no ownership interest in and receives no compensation from Bay Management Group, LLC.  However, upon review of the foregoing facts, the court finds that there is at least a genuine dispute of material fact as to whether Anderson had apparent authority on behalf of Bay Management Group, LLC to send the December 17, 2020 letter.

VII

In sum, the motion of defendants for summary judgment
will be denied as to Khawaja's defamation claim concerning
Anderson's statement in his December 17, 2020 letter that
Khawaja "broke into the premises" of an MBMK property.  The
motion will otherwise be granted.